# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEVON WATSON, | ) | |
| | ) | Civil Action No. 17 – 545 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| SHON GILL and CO 1 | ) | |
| TEAGARDEN, | ) | |
| | ) | |
| Defendants. | ) | ECF No. 47 |
| | ) | |

## **MEMORANDUM OPINION**

For the following reasons, the Partial Motion to Dismiss filed by Defendant Teagarden (ECF No. 47) will be granted in part and denied in part. Specifically, the Motion to Dismiss will be granted as to Plaintiff's calculated harassment and equal protection claims and these claims will be dismissed with prejudice as to both Defendants. The Motion to Dismiss will be denied as to Plaintiff's claim for assault and battery. Plaintiff's due process claim that he raises for the first time in his response in opposition to the Motion to Dismiss will be dismissed *sua sponte* but his claim for retaliation will move forward.

### A. **Procedural Background**

Plaintiff Devon Watson ("Plaintiff") initiated the instant prisoner civil rights action pursuant to 42 U.S.C. § 1983 by submitting a Complaint that was docketed on April 27, 2017. (ECF No. 1.) Plaintiff filed an Amended Complaint on December 6, 2017 (ECF No. 30) that was subsequently stricken from the record for his failure to receive permission before filing (ECF Nos. 31, 32). He then requested and received permission to file an Amended Complaint

1

(ECF Nos. 36, 38, 39) which was docketed on January 10, 2018 (ECF No. 40). Shortly thereafter, Plaintiff filed a Second Amended Complaint (ECF No. 43) and a Third Amended Complaint (ECF No. 46).[1] Defendant Teagarden responded by filing a Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 47) to which Plaintiff filed a Brief in Opposition (ECF No. 51). Plaintiff filed a Motion to Correct Errors (ECF No. 65) made on paragraphs 33 and 35 of his complaint, which was granted on August 13, 2018 (ECF No. 69). As a result, paragraphs 33 and 35 were stricken and replaced by those in his motion. Defendant Teagarden's Motion to Dismiss is now ripe for review.

### B. Factual Background

The following allegations are contained in Plaintiff's Third Amended Complaint (ECF No. 46). On November 2, 2016, Plaintiff was escorted from the Psychiatric Observation Cell ("POC") at SCI-Greene to Housing Block H ("H-Block") by Defendants Gill and Teagarden. Id., ¶¶ 6-7. Plaintiff states that during the escort, Defendants aggressively grabbed him, forcing his arms into an awkward angle that caused him pain. Id., ¶¶ 6, 9. Plaintiff also states that while he was being escorted, he heard "laughing and loud noises coming from down the hallway, which prompted him to look in the direction the sounds were coming from." Id., ¶ 11. At that moment, he heard an unknown sergeant and Defendant Gill state that they were going to "fuck him up" if Plaintiff turned his head again. Id., ¶ 12. This started a verbal exchange between Plaintiff and Defendant Gill, which Plaintiff states consisted of threats made by Defendant Gill that caused him to fear for his safety and well-being. Id., ¶¶ 13-14, 16. In response to Defendant Gill threatening Plaintiff physical harm if he were to "turn his head," Plaintiff stated to Defendant Gill that he would "only do so on camera" or else it would be staff's word against his

---

[1] Plaintiff incorrectly labeled his Third Amended Complaint as a Second Amended Complaint.

own and no one would believe him. Id., ¶ 18. When they entered H-Block, Defendant Gill gestured in the direction of something he said was a camera and told Plaintiff "there goes a camera right there, now turn your fucking head." Id., ¶ 20. Plaintiff turned his head and only saw a circular mirror. Id., ¶ 21. He states that, at that moment, Defendant Gill "quickly slammed [him] into the wall, while screaming 'stop resisting.'" Id., ¶ 22. Plaintiff states that Defendant Teagarden then joined in on the assault by assisting Defendant Gill with "slamming him on the ground." Id., ¶ 24. Defendant Gill then allegedly struck Plaintiff in the face and head repeatedly with his knee. Id., ¶ 29.

He alleges that it is practice for correction officers at SCI-Greene to use the phrase "stop resisting" in order to create a false record of resistance to justify the use of excessive force. Id., ¶ 23. He also claims that force was used against him without provocation and as a means of punishment and revenge. Id., ¶¶ 25, 27.

As a result of the force used by Defendants, Plaintiff claims to have hit the floor so hard that his tooth went through his lip. Id., ¶ 28. He was escorted to medical triage where he was treated by two unknown nurses and then transferred to a cage where he was strip searched before being housed in the RHU. Id., ¶¶ 30, 32.

Later that night, Plaintiff was issued a misconduct for allegedly telling Defendant Gill during the escort that he was going to spit on him if he didn't get his property back and making hawking sounds as if he was going to do so. (ECF No. 65, p.2.) Plaintiff claims that the misconduct was falsified by Defendant Gill so that he had an excuse for using excessive force against him and Plaintiff also claims that Defendant Gill had Defendant Teagarden confirm the report to cover up Gill's use of force. Id.

Plaintiff states that he reported the alleged assault on him to the abuse hotline on November 5, 2016, and, on February 3, 2017, the allegation of abuse was upheld as substantiated by the security department at SCI-Greene and the Office of Special Investigations and Intelligence. (ECF No. 46, ¶¶ 37-38.)

Plaintiff had another run-in with Defendant Gill on March 1, 2017, at which time Defendant Gill allegedly tightened his grip on Plaintiff's arm while he was escorting Plaintiff to speak to the PREA Lieutenant and his counselor. Id., ¶ 39. Defendant Gill told Plaintiff, "When I get a chance, I'm going to get you again." Id., ¶ 40. Plaintiff reported Defendant Gill's behavior to Lieutenant Howells and Counselor Mansberry. Id., ¶ 43. In turn, Lieutenant Howells spoke to Unit Manager Mankey who then reassigned Defendant Gill to a different work station while she was present in the facility. Id., ¶ 44. However, Defendant Gill went back onto Plaintiff's unit when Mankey was not present in the facility, and Plaintiff states that this caused him continued sleeplessness and paranoia. Id., ¶ 45.

Plaintiff also reported Defendant Gill's continual harassment to Sergent Charney, informing him that he may be "forced to strike [Defendant] Gill first before he'd allow Gill to brutally beat on him again." Id., ¶ 46. As a result of this admission, Plaintiff received another misconduct. Id., ¶ 47.

Plaintiff was transferred from SCI-Greene's RHU mental health unit to the RHU mental health unit at SCI-Graterford on May 31, 2017. Id., ¶ 50. He states that he is still confined in the RHU which prohibits him from meeting parole eligibility requirements. Id., ¶ 52. He also claims that he is being treated differently than other inmates. Id., ¶ 53.

**C. Standard of Review**

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a Plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a Plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); *see also* Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir. 2013).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014).

When considering *pro se* pleadings, a court must employ less stringent standards than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a §1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege

5

sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### D. Discussion

Plaintiff raises the following claims for relief: calculated harassment (count one); excessive force (count two); equal protection (count three); and assault and battery (count four). Defendants move to dismiss counts one, three and four.

#### a. Calculated Harassment

Plaintiff claims that Defendants violated his right to be free from cruel and unusual punishment by their "initiation of calculated harassment through [the] overt and malicious use of excessive force" against him and falsifying a misconduct report in order to "justify and[/]or conceal their arbitrary conduct in the assault [on] November 2, 2016." (ECF No. 46, ¶¶ 62-63.) The Motion to Dismiss seeks dismissal of this claim because its description appears to be a restatement of Plaintiff's excessive force claim. Plaintiff, however, insists that it is not a restatement of his excessive force claim, but rather evidence of a "pattern of calculated harassment" such that "the cumulative effect is of a constitutional magnitude." (ECF No. 51, p.4.) According to Plaintiff, this appears to encompass Defendants' threats to cause him physical harm, manipulation of a situation so that they could engage in the arbitrary use of force, and the subsequent falsification of official documents. Id., p.3.

Despite Plaintiff's pleas to the contrary, "calculated harassment" is not a claim in and of itself apart from the separate and discrete actions by the Defendants. Thus, while Plaintiff may assert individual claims for excessive force and due process, which he does, he is not entitled to relief based on the cumulative effect of Defendants' actions that gave rise to those individual claims. It is also noted that verbal abuse of inmates and threats by guards does not state a

6

constitutional claim. *See* Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006) (citing cases). For these reasons, the Court will grant the Motion to Dismiss as to this "calculated harassment" claim and to any stand-alone claim based on the alleged verbal harassment and abuse Plaintiff suffered.

### b. Equal Protection

Plaintiff alleges that Defendants have violated his right to equal protection by treating him differently from other inmates. How Plaintiff claims he was treated differently is less than clear in his complaint, but he appears to clarify somewhat in his response in opposition to the Motion to Dismiss. Specifically, he states that the Defendants treated him differently from other inmates by intentionally provoking him into reacting in ways that would justify the use of force against him and falsifying misconduct reports resulting in Plaintiff's confinement in restricted housing so that he is unable to satisfy the program requirements for parole. (ECF No. 51, pp.4-6.)

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Artway v. Attorney General of State of N.J., 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985)). *See also* United States v. Armstrong, 517 U.S.456 (1996) (Equal Protection Clause prohibits decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

Plaintiff's equal protection claim does not implicate a suspect class, as prisoners are not a suspect class, Myrie v. Comm'r, N.J. Dep't of Corr., 267 F.3d 251, 263 (3d Cir. 2001); Abdul-

7

Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001). Nor does Plaintiff's equal protection claim implicate a fundamental right, e.g., rights which implicate a fundamental human interest, such as the right to vote, the right of association, the right of access to the courts, or any rights of privacy. *See, e.g.,* Abdul-Akbar, 239 F.3d at 317 (termination of parental rights and ability to obtain a divorce are fundamental rights); Vill. Of Belle Terre v. Boraas, 416 U.S. 1, 7 (1974) (citations omitted) (fundamental rights guaranteed by the Constitution include voting, the right of association, the right of access to the courts, or any rights of privacy). Consequently, when a plaintiff does not allege membership in a suspect class or interference with a fundamental right, he "must at a minimum allege that he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment." Phillips v. County of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008).

Here, Plaintiff has failed to state a claim for an equal protection violation because he has failed to identify any specific inmate(s) from whom he was treated differently. Instead, his reference to "similarly situated inmates" appears to refer to all inmates in general. However, Plaintiff seems to acknowledge that his circumstances are not in fact similar to all other inmates and that he was treated differently based on his individual conduct. For example, he states in his response in opposition to the Motion to Dismiss that Defendants attacked him as revenge for making complaints against other officers. (ECF No. 51, p.5.) In fact, Plaintiff's allegations appear to be nothing more than a claim for retaliation.[2] Thus, having failed to describe any similarly situated inmates who were treated differently, Plaintiff has failed to raise a right to

---

[2] In his response in opposition to the Motion to Dismiss, and in connection with these factual allegations, Plaintiff raises for the first time claims for retaliation and due process. (ECF No. 51, p.6.) These claims were not included in his complaint but will nonetheless be addressed given Plaintiff's *pro se* status.

8

relief under the Equal Protection Clause. Accordingly, Plaintiff's equal protection claim will be dismissed with prejudice.

### c. Assault and Battery

Plaintiff claims that Defendants' actions amounted to the state tort of assault and battery under Pennsylvania law. Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 PA. CONS. STAT. § 2310. Sovereign immunity applies to intentional as well as negligent torts. Story v. Mechling, 412 F. Supp. 2d 509, 518-19 (W.D. Pa. 2006). There are, however, nine exceptions to sovereign immunity: (1) vehicle liability; (2) medical/professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoid and vaccines. 42 PA. CONS. STAT. § 8522(b).

Although Plaintiff's state law claims are not included in the categories for which sovereign immunity has been waived, Defendants are only entitled to immunity if they were acting within the scope of their employment during the alleged assault that occurred on November 2, 2016. *See* 1 PA. CONS. STAT. § 2310. Under Pennsylvania law, conduct falls within the scope of employment if it "is of a kind and nature that the employee is employed to perform; it occurs substantially within the authorized time and space limits; it is actuated, at least in part, by a purpose to serve the employer; and if force is intentionally used by the employee against another, it is not unexpected by the employer." Strothers v. Nassan, Civ. No. 08-1624,

2009 WL 976604, at *8 (W.D. Pa. Apr. 9, 2009) (quoting Natt v. Labar, 543 A.2d 223, 225 (Pa. Commw. Ct. 1988)).

If Plaintiff's allegations are true, then Defendants use of force was unprovoked and unwarranted by security concerns or penological interests. This alleged use of force is not the type of force expected or permitted by employees with the Department of Corrections. While the record may prove otherwise after discovery, neither Defendant is entitled to sovereign immunity at this stage of the proceedings.

### d. Retaliation

Plaintiff asserts that Defendants' antagonization and use of force against him was revenge for his filing of complaints against officers. (ECF No. 51, pp.5-6.)

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[3] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.[4] Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

---

[3] An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

[4] The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *See* Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)). The mere fact that an adverse action occurs after a complaint

At this stage of the litigation, there are enough facts set forth by Plaintiff to raise a reasonable expectation that further discovery in this case may reveal evidence of retaliatory intent.[5] Although Plaintiff faces a substantial burden in proving his claim, he alleges sufficient facts to support a cause of action based on retaliatory use of force.

   e. **Due Process**

Plaintiff claims that the way he was treated by Defendants also gives rise to a due process claim. (ECF No. 51, p. 6.) However, Defendants' conduct in this case as alleged by Plaintiff does not give rise to an actionable due process claim. Plaintiff was not denied a liberty or a property interest, and therefore does not have a procedural due process protections, *see* Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000), and Defendants' action does not rise to the level of conscience-shocking egregiousness so as to give rise to a claim of substantive due process, *see* United Artists Theatre Circuit, Inc. v. Township of Warrington, Pa., 316 F.3d 392, 399-400 (3d Cir. 2003). Therefore, the Court will *sua sponte* dismiss this claim with prejudice.[6]

In sum, the Motion to Dismiss will be granted as to Plaintiff's calculated harassment and equal protection claims and these claims will be dismissed with prejudice as to both Defendants. The Motion to Dismiss will be denied as to Plaintiff's claim for assault and battery. Plaintiff's

---

or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 F. App'x. 491, 498 (3d Cir. 2005).

[5] A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. See Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995) (prison officials may not retaliate against an inmate for complaining about a guard's misconduct).

[6] Because Plaintiff is proceeding *in forma pauperis*, the Court is granted the authority to *sua sponte* dismiss his complaint, or any portion thereof, that (a) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (b) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

due process claim that he raises for the first time in his response in opposition to the Motion to Dismiss will be dismissed *sua sponte* but his claim for retaliation will move forward.

E. **Amendment of Complaint**

The court must allow amendment by the plaintiff in civil rights cases brought under § 1983 before dismissing pursuant to Rule 12(b)(6), irrespective of whether it is requested, unless doing so would be "inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); *see also* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (asserting that where a complaint is vulnerable to dismissal pursuant to 12(b)(6), the district court must offer the opportunity to amend unless it would be inequitable or futile). We are cognizant of these holdings but find that allowing for amendment by Plaintiff would be futile.

Dated: October 17, 2018.

                                                        Lisa Pupo Lenihan
                                                        United States Magistrate Judge

cc: Devon Watson
    LA 4948
    SCI Fayette
    48 Overlook Drive
    LaBelle, PA 15450

    Counsel for Defendants
    *Via CM/ECF Electronic Mail*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEVON WATSON, | ) | |
|           Plaintiff, | ) | Civil Action No. 17 – 545 |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| SHON GILL and CO 1 TEAGARDEN, | ) | |
|           Defendants. | ) | ECF No. 47 |

**ORDER**

**AND NOW**, this 17th day of October, 2018;

**IT IS HEREBY ORDERED** that the Partial Motion to Dismiss filed by Defendant Teagarden (ECF No. 47) is granted in part and denied in part. The Motion to Dismiss is granted as to Plaintiff's calculated harassment and equal protection claims and these claims are dismissed with prejudice as to both Defendants. The Motion to Dismiss is denied as to Plaintiff's claim for assault and battery. Plaintiff's claim for retaliation will move forward.

**IT IS FURTHER ORDERED** that Plaintiff's due process claim is *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

                                                                  Lisa Pupo Lenihan
                                                                   United States Magistrate Judge

cc: Devon Watson
      LA 4948

SCI Fayette
48 Overlook Drive
LaBelle, PA  15450

Counsel for Defendants
*Via CM/ECF Electronic Mail*